UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| MICHAEL BANERIAN, *et al.*,<br>    Plaintiffs,<br><br>v.<br><br>JOCELYN BENSON, in her official<br>capacity as the Secretary of State<br>of Michigan, *et al.*,<br>    Defendants. | No. 1:22-cv-54<br><br>Three-Judge Court |

## OPINION GRANTING PARTIAL MOTIONS TO DISMISS

KETHLEDGE, Circuit Judge.   Ten Michigan voters challenge the State's new congressional districting plan, asserting two different federal constitutional claims. The first is that the plan violates the "one-person, one-vote" principle announced by the Supreme Court in *Wesberry v. Sanders*, 376 U.S. 1, 7-8 (1964). That claim is not at issue here. The other claim is that the plan fragments the plaintiffs' "communities of interest" more than it does such "communities" of other voters, thereby allegedly diluting the strength of the plaintiffs' votes. That claim is a blood relative of the claims of partisan gerrymandering that the Supreme Court found nonjusticiable in *Rucho v. Common Cause*, 139 S. Ct. 2484, 2506-07 (2019). We hold that the plaintiffs' "communities of interest" claim is nonjusticiable for many of the same reasons that the claims in *Rucho* were. We therefore grant the motions to dismiss that claim.

I.

In November 2018, Michigan voters approved a state constitutional amendment that shifted from the state legislature to the "Michigan Independent Citizens Redistricting Commission" the

1

power to draw congressional districts. The amendment directed the Commission to draw districts according to specified criteria, in the following order of priority:

    (a) Districts shall be of equal population as mandated by the United States constitution, and shall comply with the voting rights act and other federal laws.

    (b) Districts shall be geographically contiguous. Island areas are considered to be contiguous by land to the county of which they are a part.

    (c) Districts shall reflect the state's diverse population and communities of interest. Communities of interest may include, but shall not be limited to, populations that share cultural or historical characteristics or economic interests. Communities of interest do not include relationships with political parties, incumbents, or political candidates.

    (d) Districts shall not provide a disproportionate advantage to any political party. A disproportionate advantage to a political party shall be determined using accepted measures of partisan fairness.

    (e) Districts shall not favor or disfavor an incumbent elected official or a candidate.

    (f) Districts shall reflect consideration of county, city, and township boundaries.

    (g) Districts shall be reasonably compact.

Mich. Const. art. IV, § 6(13).

In December 2021, after considering five different redistricting plans, the Commission adopted the "Chestnut Plan" (the "Plan"). About a month later, the plaintiffs brought this lawsuit against the Michigan Secretary of State and each of the Commissioners in their official capacities, challenging the Plan as unconstitutional. The defendants and various intervenor-defendants now move to dismiss Count II, in which the plaintiffs assert that the Commission so misapplied "traditional redistricting criteria" that the Plan violates the federal Equal Protection Clause.

II.

A.

"The threshold element of an equal protection claim is disparate treatment[.]" *Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006). In an equal-protection case challenging legislative district lines in particular, the claim, generally stated, is that the votes of some citizens are "debased and diluted" as compared to the votes of other citizens. *Reynolds v. Sims*, 377 U.S. 533, 556 (1964).

Yet challenges to electoral-district lines are notoriously difficult to adjudicate. Some types of governmental action are left to the discretion of elected officials—which means, to that extent, those actions are "only politically examinable[,]" and not governed by law. *Marbury v. Madison*, 5 U.S. 137, 166 (1803). The President's exercise of his veto power is one example. For a court to intervene, rather, "there must be some rule of law to guide the court in the exercise of its jurisdiction." *Id*. at 165.

Those rules are absent, the Supreme Court has held, in cases where citizens claim that their votes were diluted by means of "political gerrymandering[.]" *Rucho*, 139 S. Ct. at 2497 (cleaned up). For the Constitution permits at least some political gerrymandering, and provides no standards as to when it "has gone too far." *Id*. (internal quotation marks omitted). Thus, political-gerrymandering claims rest on notions of fairness, indeed of *political* fairness; and the "federal courts are not equipped to apportion political power as a matter of fairness." *Id.* at 2499.

In only "two areas—one-person, one-vote and racial gerrymandering"—has the Supreme Court "held that there is a role for the courts with respect to at least some issues that could arise from a State's drawing of congressional districts." *Id.* at 2495-96. The "one-person, one-vote rule is relatively easy to administer as a matter of math." *Id.* at 2501. And "a racial gerrymandering

3

claim does not ask for a fair share of political power[,]" but "asks instead for the elimination of a racial classification." *Id.* at 2502. Hence the courts can adjudicate those two types of claims according to "judicially discoverable and manageable standards." *Id*. at 2494 (cleaned up). The Supreme Court has otherwise rejected theory after theory by which, various plaintiffs have argued, the federal courts should adjudicate political-gerrymandering claims. *See, e.g.*, *id.* at 2506-07; *Vieth v. Jubelirer*, 541 U.S. 267, 306 (2004) (plurality opinion); *Gaffney v. Cummings*, 412 U.S. 735, 753-54 (1973).

B.

Yet here the plaintiffs offer another. Their claim is not—expressly at least—that the Plan reflects "excessive partisanship in districting." *Rucho*, 139 S. Ct. at 2491. Instead, the plaintiffs allege that the Plan "fragment[s]" their "communities of interest" more than it fragments other voters' "communities of interest"—which the plaintiffs say diminishes their ability "to elect candidates who can represent the interests of both the individual and the community." Compl. ¶¶ 116, 118.

That is just a political-gerrymandering claim by another name. Just as the Constitution allows States to draw lines for congressional districts based on partisan interests, so too it allows them to "fragment" voters' "communities of interest." And no principle discernable in the Constitution can direct a court's decision as to when such fragmentation "has gone too far." *Rucho*, 139 S. Ct. at 2497 (cleaned up). The Supreme Court has already said as much, when it rejected "'traditional' districting criteria"—including "communities of interest"—as a potential "fairness touchstone" in challenges to legislative districts. *Id*. at 2500-01. True, the Michigan Constitution has ranked the criteria here, whereas they had not been ranked in *Rucho*; but that still leaves the

4

question of "how much deviation from each [criterion] to allow"—to which the Court saw no legal answer. *Id*. at 2501.

Indeed, the claim here would be shot through with political judgments even more than the claim in *Rucho* was. Start with the definition of "communities of interest." The term's vagueness affords the Commission broad discretion to define the term however it likes. (The term's vagueness does not raise due-process concerns because it is not embedded in a rule of conduct.) The plaintiffs do allege in conclusory fashion that "Michigan's true communities of interest" are "counties[.]" Compl. ¶ 116. But that is plainly untrue, given that, under the Michigan Constitution, county lines are expressly part of a different (and lower-ranked) criterion altogether; and the "communities of interest" criterion itself provides that such communities "may include, but shall not be limited to, populations that share cultural or historical characteristics or economic interests." Mich. Const. art. IV, § 6(13)(c), (f). Those "characteristics" and "interests" are in no way bounded by law and thus are not judicially reviewable. *See Marbury*, 5 U.S. at 165.

Moreover, the Michigan Constitution's reference to those different characteristics and interests plainly contemplates that an individual voter can belong to multiple communities of interest—ethnic, geographic, economic, and so on—some of which might be more "fragmented" than others. But the federal Constitution lacks rules to circumscribe the multiplicity of potential "communities," or to determine the net effect of fragmenting some of a voter's communities while leaving others intact. And the very premise of the plaintiffs' claim—that the cohesion of communities of interest within districts affects the relative strength of a citizen's vote—means that these are communities of *political* interest, comprising voters who tend to vote the same way. Defining such communities is no business of the courts. Nor does the federal Constitution afford us any basis to review the Commission's trade-offs between "communities of interest" and the

5

other districting criteria enumerated under Michigan law. Trade-offs among legitimate interests involve legislative judgments, not judicial ones.

In the end, the claim at issue here rests upon the plaintiffs' own notions of political fairness. And a "judicial decision on what is fair in this context would be an unmoored determination of the sort characteristic of a political question beyond the competence of the federal courts." *Rucho*, 139 S. Ct. at 2500 (cleaned up). The plaintiffs' claim in Count II is nonjusticiable.

We grant the defendants' motions and dismiss Count II of the plaintiffs' complaint.